650 P.2d 833

STATE of New Mexico, ex rel. NEW MEXICO STATE HIGHWAY DEPARTMENT, Plaintiff-Appellant,

v.

Carlos J. SILVA, Defendant-Appellee,

NEW MEXICO STATE PERSONNEL BOARD, Petitioner-Appellee,

v.

NEW MEXICO STATE HIGHWAY DEPARTMENT and J. J. Hewett, Chief Highway Administrator, Respondents-Appellants,

and

Carlos J. Silva, Intervenor-Appellee.

No. 5466.

Court of Appeals of New Mexico.

Aug. 3, 1982.

Rehearing Denied Aug. 20, 1982.

Richard L. Russell, Chief Counsel, Richard Ferrary, Asst. Atty. Gen., New Mexico State Highway Dept., Santa Fe, for respondents-appellants.

Jeff Bingaman, Atty. Gen., Deborah A. Moll, Asst. Atty. Gen., Santa Fe, for petitioner-appellee N.M. State Personnel Bd.

Ann Yalman, Santa Fe, for intervenor-appellee.

## OPINION

WOOD, Judge.

SHD (New Mexico State Highway Department) dismissed its employee, Silva. This appeal involves the application of the Personnel Act to that dismissal. See §§ 10–9–1 through 10–9–25, N.M.S.A. 1978 (1980 Repl. Pamph.). Silva appealed the dismissal to the Board (Personnel Board). The Board ordered that Silva be reinstated with back pay and benefits. SHD appealed to the district court; it affirmed the Board. SHD then appealed to this Court, raising two issues: (1) the Board's authority for its reinstatement order, and (2) support for the order in the Board's findings. A third issue involves Silva's request for attorney fees. A fourth issue involves a separate mandamus action filed while SHD's appeal was pending in the district court.

SHD dismissed Silva effective August 20, 1980. The Board ruled that the dismissal was without just cause and ordered SHD to reinstate Silva, with back pay and benefits, as of November 1, 1980. Thus, what SHD viewed as sufficient to terminate Silva's employment was held by the Board to be sufficient only for loss of pay and benefits between August 20 and November 1, 1980.

### Authority for the Board's Order

N.M. Const., art. VII, § 2(B), states: "The legislature may provide by law for such qualifications and standards as may be necessary for holding an appointive position by any public officer or employee." Pursuant to this constitutional provision, the Legislature, in 1961, enacted the Personnel Act. Section 10–9–2, *supra*.

The Personnel Act provides for a "system" of personnel administration. Section 10–9–2, *supra.* As a part of this system, the Board is established, § 10–9–8, *supra;* the Board is authorized to promulgate rules providing for "dismissal or demotion procedure for employees * * * including presentation of written notice stating specific reasons * * * and appeals to the board", § 10–9–13(H), *supra;* and to hear appeals, § 10–9–10(B), *supra.* There is no issue as to these items.

In hearing the appeals, § 10–9–18(E), *supra,* provides:

E. The board may designate a hearing officer who may be a member of the board or any qualified state employee to preside over and take evidence at any hearing held pursuant to this section. The hearing officer shall prepare and submit to the board a summary of the evidence taken at the hearing and proposed findings of fact. The board shall render a decision which shall include findings of fact and conclusions of law.

A designated hearing officer heard the evidence and submitted a summary of that evidence to the Board, together with proposed findings of fact. The Board, after correcting one date, adopted the proposed findings as its findings of fact. The Board concluded: "The dismissal of Carlos J. Silva was without just cause." There is no issue as to compliance with § 10–9–18(E), *supra.*

The Board's authority, in deciding the appeal, is stated in § 10–9–18(F), *supra.* It reads:

F. If the board finds that the action taken by the agency was without just cause, the board may modify the disciplinary action or order the agency to reinstate the appealing employee to his former position or to a position of like status and pay. Every consideration shall be given to placing the appealing employee in the same geographical location in which he was employed prior to the disciplinary action. The board may recommend that the appealing employee be reinstated by an agency other than the one who disciplined the appealing employee.

When the board orders an agency to reinstate an appealing employee, such reinstatement shall be effective within thirty days of the board's order. The board may award back pay as of the date of the dismissal, demotion or suspension or as of such later date as the board may specify.

SHD does not dispute that the Board was authorized to order certain actions, specified in the statute, if the Board determined that SHD's dismissal of Silva was "without just cause". SHD's appellate issues involve the basis for such a determination.

SHD's specific contentions are not based on any inconsistency in the wording of § 10–9–18(E) and (F), *supra.* Subparagraph E provides for findings of fact and conclusions of law. Subparagraph F authorizes the Board to order certain action if the Board "finds" that SHD's action was "without just cause". The phrase "without just cause" could be either a finding or a conclusion. See *Goodwin v. Travis,* 58 N.M. 465, 272 P.2d 672 (1954). "Finds" as used in Subparagraph F refers to a Board ruling that agency action was "without just cause"; thus, as used in this statute, "finds" means a legal conclusion. The Board's decision contains such a conclusion. There is no claim that the Board erred because it used the word "conclusion" rather than the statutory word "finds".

SHD makes three claims; they involve (a) the meaning of "just cause", (b) the Board's decisional authority if it finds there was employee misconduct, and (c) the intent and policy of the statute.

**(a) Meaning of "just cause".**

The Board's authority to modify an agency's disciplinary action or to order reinstatement of the employee, under § 10–9–18(F), *supra,* depends upon a ruling that the agency's action was "without just cause". The Personnel Act does not define "just cause".

The Board has adopted rules concerning "just cause". The rules were introduced as an exhibit in the district court; this exhibit has not been included in the appellate record. However, the briefs of SHD and Silva agree that the following rules had been

adopted and were in effect at the time of Silva's dismissal.

The pertinent part of Rule 14.6C reads: Employees may be dismissed, demoted or suspended only for *just cause,* such as inefficiency, incompetency, misconduct, negligence, insubordination, for performance which continues to be inadequate after reasonable efforts have been made to correct it * * *. (Emphasis in original.)

Rule 1.24 reads:

*"Just Cause"* means any conduct, action or inaction, arising from, or directly connected with the employee's work, which is inconsistent with the employee's obligations to the employer and reflects the employee's disregard of the employer's interests.

SHD contends the above-quoted rules provide "an objective standard which circumscribes the Board's discretion"; specifically, that the Board's authority under § 10–9–18(F), *supra,* is limited by the narrow definition of "just cause" in the rules.

■ The above-quoted rules define "just cause" in terms of the employee's "conduct, action or inaction, arising from, or directly connected with the employee's work, which is inconsistent with the employee's obligations . . . ." Because this definition is phrased solely in terms of the activity or inactivity of the employee, SHD asserts the Board has authority to modify agency action or order reinstatement of the employee only if there is insufficient evidence of employee misconduct. According to SHD, "without just cause" means "without sufficient evidence of employee misconduct." We disagree.

Section 10–9–18(F), *supra,* refers to "action taken by the agency" without just cause. This statutory provision does not refer to employee conduct; it refers to *agency action* which is taken because of the employee's conduct. The Board, in deciding the appeal, must decide whether agency action was based on just cause; if the Board determines that agency action was "without just cause", the Board is authoriz-

ed to order remedial action as provided in § 10–9–18(F), *supra.* This statute authorizes the Board to decide the propriety of the agency's action—in this case, the dismissal of Silva. This statutory authority serves as a check on "arbitrary and capricious action on the part of" the employing agency. *Safransky v. State Personnel Board,* 62 Wis.2d 464, 215 N.W.2d 379 (1974).

■ SHD's effort to limit the meaning of "just cause" to employee conduct as defined in the rule is based on the view that the rule controls the statute. This view is incorrect. The Board has statutory authority to adopt rules; however, the rules adopted may not abridge the right or duty imposed by statute. *State v. Ashby,* 73 N.M. 267, 387 P.2d 588 (1963); *see Leaco Rural Tel. Coop., Inc. v. Bureau of Revenue,* 86 N.M. 629, 526 P.2d 426 (Ct. App. 1974); *Rainbo Baking Co. of El Paso v. Commissioner of Rev.,* 84 N.M. 303, 502 P.2d 406 (Ct. App. 1972). The rules adopted by the Board limiting the meaning of "just cause" to employee conduct does not abridge the authority conferred upon the Board by § 10–9–18(F), *supra.* That authority was to determine whether agency action was "without just cause".

**(b) The Board's decisional authority if it finds there was employee misconduct.**

■ SHD asserts "the Board cannot reinstate if it finds that there was employee misconduct." This argument, in part, is related to the rejected contention (see discussion under (a) above) that the Board's authority under § 10–9–18(F), *supra,* is limited to deciding whether employee misconduct has been established. However, this argument also goes beyond the contentions discussed under (a) above, and challenges the authority of the Board to independently determine the appropriateness of agency action. According to SHD, if the Board finds there was employee misconduct, the Board must affirm the action taken by the agency. In the terms of the statute, SHD's contention is that if the Board finds there

was employee misconduct, it cannot rule that agency action was without just cause.

We have previously pointed out that the Board must decide the propriety of the agency's action. The statutory scheme of § 10–9–18(E) and (F), *supra,* provides for an evidentiary hearing, a decision by the Board consisting of findings of fact and conclusions of law, and a ruling based on that decision. Under this statutory scheme, the Board, in deciding an appeal, acts as a quasi-judicial body. *Montoya v. Department of Finance & Administration,* 98 N.M. 408, 649 P.2d 476 (Ct. App. 1982), *cert. granted* and pending; *see Fellows v. Schultz,* 81 N.M. 496, 469 P.2d 141 (1970). This legislative scheme does not limit the Board's decision to agreeing with the action taken by the agency if the Board finds there was employee misconduct. Under § 10–9–18(F), *supra,* the Board could find there was employee misconduct and could also determine the agency's action was inappropriate for the misconduct found by the Board. Specifically, the statute does not limit the Board to two choices, that of agreeing or disagreeing, with the agency's action taken. The Board may also modify the agency's action and this includes reinstatement of a dismissed employee.

**(c) Intent and policy of the statute.**

█ SHD states: "to hold that the statute empowers the Board to find misconduct and thereafter to still require that the malfeasant employee be reinstated, is to torpedo the constructive effect of agency discipline under the Personnel Act." SHD asserts the damaging results of such a holding are illustrated by this case. According to SHD, if it is found that Silva violated rules concerning hours of work and the use of a state car "it is a travesty of legislative intent and a senseless waste of taxpayer's money to interpret the Personnel Act to allow him to be reinstated to perform exactly the same job for which he has been proven incapable and untrustworthy."

SHD's argument concerning legislative intent disregards both the legislative history and the plain wording of the statute.

When originally enacted in 1961, the Board's authority in deciding appeals was limited to recommendations which the employing agency was not required to follow. The legislative history shows a consistent increase in the authority of the Board in deciding appeals. See Laws 1961, ch. 240, § 13; Laws 1963, ch. 200, § 5; Laws 1973, ch. 66, § 1; Laws 1975, ch. 5, § 1, and the current statute, Laws 1980, ch. 47, § 2, which is § 10–9–18 of the 1978 Compilation. The plain wording of § 10–9–18(F), *supra,* is that if agency action was without just cause the Board "may modify the disciplinary action or order the agency to reinstate the appealing employee * * *." Our holding is that the Board may find employee misconduct and may also order reinstatement; such accords with the legislative language in § 10–9–18(F), *supra,* and is not a travesty of legislative intent.

SHD's argument that this holding torpedos the "constructive effect" of agency discipline, and wastes public money, is directed to the policy embodied in § 10–9–18(F), *supra.* That policy is that the employing agency does not have the final word as to employee discipline. SHD may dislike that policy; nevertheless, the policy was established by the Legislature. The wisdom of this policy is not our concern; SHD's dislike of the policy provides no basis for this Court to refuse to apply the legislative enactment. *Alber v. Nolle,* 98 N.M. 100, 645 P.2d 456 (Ct. App. 1982).

In summary of this first point, the Board had legal authority to rule as it did.

**Support for the Board's Order in its Findings**

Even if § 10–9–18(E), *supra,* did not require the Board's decision to include findings of fact and conclusions of law, the decision would not be in accordance with law, see § 10–9–18(G)(3), *supra,* unless the decision was sufficient for a reviewing court to know the path the Board took through the conflicting evidence and the basis for the Board's decision. *City of Roswell v. New Mexico Water Qual. Con. Com'n,* 84 N.M. 561, 505 P.2d 1237 (Ct. App. 1972).

Inasmuch as § 10–9–18(E), *supra*, requires findings and conclusions, SHD asserts that the conclusion that Silva was dismissed without just cause must be supported by the Board's findings. Silva does not contend otherwise. "[A] judgment cannot be sustained on appeal unless the conclusion on which it rests finds support in one or more findings of fact." *Thompson v. H.B. Zachry Co.*, 75 N.M. 715, 410 P.2d 740 (1966). This rule applies to the findings and conclusions required by § 10–9–18(E), *supra*.

SHD does not contend that the Board's findings are not supported by substantial evidence. Its claim is that the findings made do not support the Board's conclusion; that the conclusion and the findings are in "irreconcilable conflict". We disagree.

■ The Board's findings are almost entirely evidentiary; not findings of ultimate facts. See *Galvan v. Miller*, 79 N.M. 540, 445 P.2d 961 (1968). Some of the findings are that Silva committed misconduct. SHD states that there "was no finding of mitigating circumstances." If SHD claims there was no finding using the words "mitigating circumstances", then SHD is correct. If SHD claims that none of the findings made amount to mitigating circumstances, it is incorrect. Though the findings are evidentiary, they are adequate to resolve the factual issues in dispute. *Mora v. Martinez*, 80 N.M. 88, 451 P.2d 992 (1969). The findings are sufficient because a fair construction of all the findings justifies the Board's conclusion. See *H.T. Coker Const. Co. v. Whitfield Transp., Inc.*, 85 N.M. 802, 518 P.2d 782 (Ct. App. 1974). The Board's "path may reasonably be discerned." *Bowman Transp. v. Ark.-Best Freight System*, 419 U.S. 281, 95 S.Ct. 438, 42 L.Ed.2d 447 (1974).

SHD gave Silva written notice, stating specific reasons for the dismissal. Section 10–9–13(H), *supra*. SHD states that the notice "contained four allegations of misconduct all of which were proved and ultimately contained in the Board's findings of fact[.]" This is incorrect.

Silva was surveilled during seven days in May and July of 1980. SHD asserts that one of four grounds of misconduct observed was "[d]isregard of established work hours". The Board found that Silva, classified as a Right-of-Way Agent, "was assigned to the Right of Way Bureau in Santa Fe and worked in Albuquerque." Apparently Silva's home was in Albuquerque. The Board found that Silva did not comply with work hours at the district office in Albuquerque, and took more than the one hour for lunch authorized for persons working in the district office. However, the Board also found that Silva was not assigned office space at the district office, and used the district office only to "conduct certain of his affairs"; that Silva did perform work at his home; that while working in the field, work hours were more flexible; and that Silva's position required the exercise of sound judgment. There was no finding that Silva did not work a full eight-hour day. In light of the foregoing, the Board did *not* find that Silva disregarded established work hours.

Another of the asserted grounds of misconduct was that Silva misused a state vehicle during work hours. Inasmuch as this allegation of misconduct was tied to "work hours", the Board's findings as to flexible work hours, and where work was performed, have the effect of a failure to find that misuse occurred during work hours.

The other two allegations of misconduct were that Silva misused a state vehicle for personal business and that he disregarded previous warnings about the proper use of a state vehicle. The Board found that Silva was "questioned" about his proper use of a state vehicle on April 1, 1975, had been "reprimanded" concerning such use on June 21, 1976, had been "cautioned" concerning such use on December 7, 1977, and "reprimanded" concerning such use on June 6, 1978. The Board found that on the seven surveillance dates, Silva used the state-owned vehicle "to conduct personal business, such as going home for lunch, to a bank, and other non-work related business establishments"; that he "kept his assigned State vehicle at his home at night"; that

his personal vehicle was available for such use; and that Silva was familiar with rules prohibiting such use. These are findings of misconduct.

In amelioration of the misconduct in the use of a state vehicle, the Board found that the reprimands and cautions to Silva had never been recorded in his performance evaluations. The Board found that rules prohibited use of state vehicles for personal business "except when an employee is travelling on State business away from his home and regular post of duty"; that Silva was away from his regular post of duty but was not away from home.

■ The findings in the two preceding paragraphs—the misuse of a state vehicle on seven days in disregard of previous warnings, but with some ameliorating factors—do not require a reversal of the Board's conclusion that dismissal was without just cause. On the basis of those findings, the Board could properly conclude that a loss of pay for two months and eleven days was the proper disciplinary action. This holding is based on the nature of our review.

■ Section 10–9–18(G), *supra,* provides that the district court is to affirm the Board unless the decision was (1) arbitrary, capricious or an abuse of discretion; (2) not supported by substantial evidence; or (3) otherwise not in accordance with law. This Court's review is on the same basis as the district court's review. *Lloyd McKee Motors v. New Mex. St. Corp.,* 93 N.M. 539, 602 P.2d 1026 (1979). The district court may not substitute its judgment for that of the Board's, nor may this Court. *Montoya v. City of Albuquerque,* 98 N.M. 46, 644 P.2d 1035 (1982). In light of the Board's findings, its conclusion was not arbitrary, not capricious and not an abuse of discretion. The sufficiency of the evidence was not challenged and the Board had authority to decide as it did.

In summary of this second point, the conclusion reached by the Board is supported by the findings of fact.

**Attorney Fees**

■ Rule Civ. App. 27, N.M.S.A. 1978, provides that the appellate court may award attorney fees for the services of an attorney on appeal "in causes where the award of attorneys' fees is permitted by law * * *." Silva asks for an award of attorney fees on the basis of this rule.

Silva recognizes that the Personnel Act is silent on the question of attorney fees. See *Alber v. Nolle, supra.* He contends that attorney fees are authorized on either of two grounds.

First, Silva asserts that SHD's appeal was brought in bad faith and for the purpose of delay and harassment and, thus, an attorney fee should be awarded. He cites *Perez v. Gallegos,* 87 N.M. 161, 530 P.2d 1155 (1974). *Perez* discusses a *former* Supreme Court rule that authorized an award of damages, not to exceed ten percent of the judgment where the appeal was taken "merely for delay." The closest counterpart to this replaced rule is § 39–3–27, N.M.S.A. 1978. SHD's appeal raised substantive questions concerning the Board's decision; we decline to make an award under § 39–3–27, *supra.*

Second, Silva points out that § 50–4–26, N.M.S.A. 1978, authorizes an award of attorney fees in actions to obtain minimum wages. He asserts this lawsuit is similar because he "is attempting to obtain his unpaid backpay and benefits." The proceedings before the Board, with the appeals to the district court and to this Court, all of which involved proceedings under the Personnel Act, are not analogous to a suit to collect a minimum wage.

The request for an award of attorney fees is denied.

**The Mandamus Action**

The Board's order of December 4, 1980 reinstated Silva with back pay and benefits as of November 1, 1980 and also ordered that the reinstatement was to occur "within 30 days of this order." Section 10–9–18(F), *supra,* provides that "reinstatement shall be effective within thirty days of the board's order".

SHD timely appealed the Board's order to the district court. While the appeal was pending, the Board applied for, and obtained, an alternative writ of mandamus. The writ directed SHD and its chief administrator to show cause why SHD had not complied with the Board's reinstatement order. The district court permitted Silva to intervene in the mandamus proceeding and then consolidated the mandamus proceeding with SHD's appeal to the district court. The consolidated cases were decided by the district court in one decision. The decision was adverse to SHD, which appealed to this Court.

By the device of mandamus, the Board has changed from the *adjudicator* of the dispute between Silva and SHD and has become a litigant against SHD. See *Addis v. Santa Fe Cty. Valuation Protests Bd.,* 91 N.M. 165, 571 P.2d 822 (Ct. App. 1977). As a litigant, it has appeared in this Court as a *party* opposing SHD. *See Montoya v. Department of Finance & Administration, supra.* SHD does not, in this appeal, raise an issue concerning the Board's shift of position. We assume, but do not decide, that the Board is a proper party in the mandamus proceedings.

SHD's contention on appeal is that the mandamus proceeding was improper because there was an adequate remedy at law, and that remedy was the appeal which was underway at the time the mandamus proceeding was instituted. The Board and Silva respond that § 10–9–18(F), *supra,* required Silva's reinstatement within thirty days of December 4, 1980, that SHD did not comply with the Board's reinstatement order and that the Board was entitled to seek enforcement of that reinstatement order. The Board and Silva contend that mandamus to compel reinstatement was proper, regardless of the appeal, because SHD had not obtained a stay of the reinstatement order.

SHD is a state agency; its appeal operated as a stay. Rule of Civ. Proc. 62(e), N.M.S.A. 1978 (1980 Repl. Pamph.). Thus, there is no basis for the Board's rationale for pursuing mandamus during the pendency of the appeal.

The writ of mandamus is improperly issued if there is an adequate remedy by appeal. *Sweeney v. Raynolds,* 17 N.M. 282, 127 P. 23 (1912); *see Alfred v. Anderson,* 86 N.M. 227, 522 P.2d 79 (1974); *Armijo v. Armijo,* 77 N.M. 742, 427 P.2d 258 (1967). The parties seeking a mandamus remedy were the Board and Silva. The appeal was an adequate remedy; the Board's order was affirmed in the district court and this opinion affirms the district court. The writ of mandamus cannot be justified by speculation that SHD will not comply with the Board's order once our decision becomes final. *Compare McCormick v. Board of Education, Etc.,* 58 N.M. 648, 274 P.2d 299 (1954). The district court erred in issuing the writ of mandamus.

None of the litigants have questioned this Court's jurisdiction to decide the mandamus issue. This Court has such jurisdiction as is provided by law. N.M. Const., art. VI, § 29; § 34–5–8, N.M.S.A. 1978 (1981 Repl. Pamph.). We have jurisdiction over appeals from the district court when the district court proceeding was an appeal from the Board. Section 10–9–18(H), *supra.* Because the mandamus proceeding was consolidated with SHD's district court appeal, we hold, on the basis of the consolidation, that we have jurisdiction over the mandamus parties. We express no opinion as to our jurisdiction over a separate mandamus proceeding. See § 44–2–14, N.M.S.A. 1978.

We affirm that portion of the district court judgment which affirmed the order of the Board requiring reinstatement of Silva as of November 1, 1980 with back pay and benefits. We reverse that portion of the district court judgment which made the writ of mandamus permanent and directed SHD to comply with the writ.

IT IS SO ORDERED.

HENDLEY and LOPEZ, JJ., concur.